## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARTE KING, | Civil Action No. 09-3022 (KSH) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| MR. PAUL, | |
| Defendant. | |

IT APPEARING THAT:

1. On June 22, 2009, the Clerk docketed the plaintiff's civil complaint and a duly executed application to prosecute this matter in forma pauperis. See Docket Entry No. 1. The complaint, although poorly readable,[1] appears to assert the following: (a) on December 22, 2008, the plaintiff was imposed disciplinary sanction in the form of 90 days of administrative segregation; (b) on February 10, 2009, the plaintiff was informed that his administrative segregation should expire on March 23, 2009, and the plaintiff would be transferred to another correctional facility; and (c) as a result of what appears to be an administrative mix up, the plaintiff was released from administrative segregation to general prison population on May 15, 2009, rather than on March 23, 2009. See id. at 2.

2. Asserting that his detention in administrative segregation for extra seven weeks violated his civil rights and was also undertaken in retaliation for "a sexual assault suit 07-4681

---

[1] It appears that the complaint was typed on a typewriter with a very worn ribbon. See Docket Entry No. 1.

RMB,"[2] id., the plaintiff seeks compensatory and punitive damages, together with attorney fees associated with prosecuting this matter.[3] See id. at 3-4.

3. In determining the sufficiency of a complaint, the Court must be mindful to construe the facts stated in the complaint liberally in favor of the plaintiff. See Erickson v. Pardus, 551 U.S. 89 (2007); Haines v. Kerner, 404 U.S. 519 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992). Indeed, it is long established that a court should "accept as true all of the [factual] allegations in the complaint and reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). However, while a court will accept well-pled allegations as true, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. See id. Last year, addressing the clarifications as to the litigant's pleading requirement stated in the United States Supreme Court in Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), the Court of Appeals for the Third Circuit provided the

---

[2] On September 27, 2007, the plaintiff initiated a civil action asserting a failure-to-protect claim, which was dismissed without prejudice by Judge Bumb. See King v. Macfarland ("Macfarland"), 1:07-cv-04681 (RMB), Docket Entry No. 2 (D.N.J.). The plaintiff, then, submitted an amended complaint asserting that he was assaulted by a prison nurse who, allegedly, provided him with "sexual favors" upon his consent, but the plaintiff came to believe that the nurse was also providing similar "sexual favors" to other inmates became worried about incurring a sexually-transmitted disease as a result of the "favors" he was receiving. See id., Docket Entry No. 5. On April 20, 2009, Judge Bumb, presiding over the Macfarland matter, granted defendants' motion to dismiss the plaintiff's complaint in that action. See id. Docket Entry No. 59. Although Judge Bumb granted the plaintiff one more leave to amend his complaint in Macfarland, the plaintiff failed to file his second amended complaint in the matter, and the leave granted by Judge Bumb has long expired. See generally, Macfarland, Docket.

[3] This Court is not entirely clear as to what attorney fees the plaintiff has in mind, since he is proceeding in this matter pro se.

courts in this Circuit with detailed and careful guidance as to what kind of allegations qualify as pleadings sufficient to pass muster under the Rule 8 standard. See Phillips v. County of Allegheny, 515 F.3d 224, 230-34 (3d Cir. 2008). Specifically, the Court of Appeals observed as follows:

> "While a complaint . . . does not need detailed factual allegations, a plaintiff's obligation [is] to provide the 'grounds' of his 'entitle[ment] to relief' [by stating] more than labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . ." Twombly, 127 S. Ct. at 1964-65 . . . Rule 8 "requires a 'showing,' rather than a blanket assertion, of entitlement to relief." Id. at 1965 n.3. . . . "[T]he threshold requirement of Rule 8(a)(2) [is] that the 'plain statement [must] possess enough heft to 'sho[w] that the pleader is entitled to relief.'" Id. at 1966. [Hence] "factual allegations must be enough to raise a right to relief above the speculative level." Id. at 1965 & n.3. . . . [Indeed, it is not] sufficient to allege mere elements of a cause of action; instead "a complaint must allege facts suggestive of the proscribed conduct." Id.

Id. at 230-34 (original brackets removed). This pleading standard was further refined by the United States Supreme Court in its recent decision Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009):

> [In any civil action, t]he pleading standard . . . demands more than an unadorned ["]the-defendant-unlawfully-harmed-me["] accusation. [Twombly, 550 U.S.] at 555 . . . . A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." [Id.] at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." Id. at 557. . . . A claim has facial plausibility [only] when the plaintiff pleads factual content . . . . Id. at 556. [Moreover,] the plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully. Id. [Indeed, even w]here a complaint pleads facts that are "merely consistent with" a defendant's liability, [the so-alleging complaint still] "stops short of [showing] plausibility of 'entitlement to relief.'" Id. at 557 (brackets omitted). [A fortiori,] the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions [or to t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements [,i.e., by] legal conclusion[s] couched as a

> factual allegation [e.g.,] the plaintiffs' assertion of an unlawful agreement [or] that [defendants] adopted a policy "'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." . . . . [W]e do not reject these bald allegations on the ground that they are unrealistic or nonsensical. . . . It is the conclusory nature of [these] allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth. . . . [Finally,] the question [of sufficiency of] pleadings does not turn . . . the discovery process. Twombly, 550 U.S.] at 559 . . . . [The plaintiff] is not entitled to discovery [where the complaint alleges any of the elements] "generally," [i.e., as] a conclusory allegation [since] Rule 8 does not [allow] pleading the bare elements of [the] cause of action [and] affix[ing] the label "general allegation" [in hope to develop facts through discovery].

Iqbal, 129 S. Ct. at 1949-54.

4. Here, the plaintiff asserts that his civil rights were violated by the additional seven weeks of his detention in administrative segregation. The plaintiff errs. A liberty interest protected by the Due Process Clause may arise from either of two sources: the Due Process Clause itself or state law. See Hewitt v. Helms, 459 U.S. 460, 466 (1983); Asquith v. Department of Corrections, 186 F.3d 407, 409 (3d Cir. 1999). With respect to convicted and sentenced prisoners, "[a]s long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." Montanye v. Haymes, 427 U.S. 236, 242 (1976) (quoted in Hewitt, 459 U.S. at 468, and Sandin v. Conner, 515 U.S. 472, 480 (1995)). States, however, may confer on prisoners liberty interests that are protected by the Due Process Clause. "But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force,

nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484 (finding that disciplinary segregation conditions which effectively mirrored those of administrative segregation and protective custody were not "atypical and significant hardships" in which a state conceivably might create liberty interest); see also Asquith, 186 F.3d at 411-12 (return to prison from halfway house did not impose "atypical and significant hardship" on prisoner and, thus, did not deprive him of protected liberty interest). In Griffin v. Vaughn, 112 F.3d 703, 708-09 (3d Cir. 1997), the Court of Appeals for the Third Circuit held that a 15-month confinement in administrative custody did not impose "atypical and significant hardship," even in the face of state regulation requiring release to the general population after 20 days in the absence of a misconduct charge. Consequently, the plaintiff's allegations that his rights were violated by his placement in administrative segregation for extra seven weeks (or that his transfer to another prison was delayed) are subject to dismissal for failure to state a cognizable claim. Moreover, if the Court were to read the plaintiff's claims as asserting that his rights were violated because his transfer to another correctional facility was delayed by seven weeks or so, the so-construed allegations would similarly fail to state a claim. It is well established that prisoners do not have a Due Process liberty interest in being assigned to the correctional institution of his choice. See Wilkinson v. Austin, 545 U.S. 209 (2005) (noting that the Constitution does not give rise to a liberty interest in avoiding transfers to more adverse conditions of confinement); Olim v. Wakinekona, 461 U.S. 238, 245 (1983); Meachum v. Fano, 427 U.S. 215, 224-25 (1976); accord Walker v. Hughes, 558 F.2d 1247, 1252 (6th Cir. 1977) ("Federal

statutory law gives . . . prison officials full discretion in the treatment of prisoners and does not restrict the authority of prison officials over the inmates as to placement in more restrictive living status, transfer to other prisons . . . .").

5. The plaintiff's retaliation claim fares no better. True, retaliation claims survive the limitations ensuing from the holding of Sandin even when the retaliatory action does not involve a liberty interest. See Allah v. Seiverling, 229 F.3d 220, 223-24 (3d Cir. 2000). However, to prevail on a retaliation claim, a plaintiff must demonstrate that: (1) he engaged in constitutionally-protected activity; (2) he suffered, at the hands of a state actor, adverse action "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights;" and (3) the protected activity was a substantial or motivating factor in the state actor's decision to take adverse action. See Rauser v. Horn, 241 F.3d 330 (3d Cir. 2001) (quoting Allah, 229 F.3d at 225); see also Anderson v. Davila, 125 F.3d 148, 160 (3d Cir. 1997) (citing Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274 (1977)); Thaddeus-X v. Blatter, 175 F.3d 378, 386-99 (6th Cir. 1999). While filing grievances and civil complaints is constitutionally protected activity, the plaintiff's allegations fail to state a retaliation claim since the plaintiff fails to meet the third requirements of the above-discussed test. Indeed, even if this Court were to hypothesize that seven additional weeks of administrative segregation could qualify as an adverse action "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights,"[4] the almost-two-year-long span of time separating the plaintiff's

---

[4] Notably, the plaintiff's confinement in administrative segregation did not deter the plaintiff from initiating numerous civil suits: in addition to the instant action (filed on 06/22/2009), the plaintiff also initiated King v. Sherrer, 2:09-cv-00484 (SDW) (filed on

Page 6

filing of his Macfarland action and the administrative segregation at issue renders the plaintiff's claim wholly implausible under the standard articulated in Iqbal, 129 S. Ct. at 1949-54 ("the plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully. [Indeed, even w]here a complaint pleads facts that are "merely consistent with" a defendant's liability, [the so-alleging complaint still] "stops short of [showing] plausibility of 'entitlement to relief'") (citations omitted). Indeed, it would be unreasonable to presume that the plaintiff's two-year-old filing of his complaint in Macfarland (the very complaint that was dismissed in by Judge Bumb the defendants' favor right in the middle of the seven-week period, during which the plaintiff's allegedly additional administrative segregation was running) was a substantial or motivating factor in the prison authorities decision to extend the plaintiff's administrative sunction that took place almost two years later. See Figueroa v. City of Camden, 580 F. Supp. 2d 390, 407 (D.N.J. 2008) (finding that nine months was a too extensive time gap to allow inference of a motivating factor and citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997) (making the same finding)). Furthermore, the plaintiff's retaliation claim appears nearly surreal in light of the plaintiff's own concession that the prison administrators served the plaintiff with a notice informing him that the period of administrative confinement was wrongly calculated, that his release to general population should occur at the date initially scheduled, and his prison officials actually assisted the

---

02/03/09), King v. Corzine, 2:09-cv-01554 (KSH) (filed on 03/27/09), and King v. Corzine, 2:09-cv-03023 (SDW) (filed on 06/22/2009), that is, four civil action during four months.

plaintiff in his requests to be released from to general population. See Docket Entry No. 1, at 2.

IT IS therefore on this 30 day of June, 2009,

ORDERED that the plaintiff's application to proceed in this matter in forma pauperis is granted; and it is further

ORDERED that the Clerk shall file the complaint; and it is further

ORDERED that the plaintiff's complaint is dismissed for failure to state a claim upon which relief can be granted;[5] and it is further

ORDERED that the plaintiff is assessed a filing fee of $350.00 which shall be deducted from his prison account pursuant to 28 U.S.C. § 1915(b)(2) in the manner set forth below, regardless of the outcome of the litigation; and it is further

ORDERED that, pursuant to 28 U.S.C. § 1915(b)(1)(A), the plaintiff is assessed an initial partial filing fee equal to 20% of the average monthly deposits to the plaintiff's prison account for the six month period immediately preceding the filing of the complaint; when funds exist, the agency having custody of the plaintiff shall deduct said initial fee from the plaintiff's prison account and forward it to the Clerk; and it is further

---

[5] Although leave to amend should be liberally granted, the measure appears futile in this matter, since the plaintiff cannot cure the deficiencies of his claims based on extension of his administrative segregation by repleading, same as he cannot change the time-line of the events he asserted by repleading his retaliation claim. However, if the plaintiff is aware of any *actual fact* (rather than his own self-serving conclusion) indicating that the defendant directed the seven week extension of the plaintiff's administrative segregation in order to retaliate for the plaintiff's filing of his Macfarland action, the plaintiff can move this Court for reconsideration of this decision by filing with the Clerk, within thirty days from the date of entry of this memorandum opinion and order, a written statement detailing the *facts* of the defendant's liability.

ORDERED that, pursuant to 28 U.S.C. § 1915(b)(2), until the $350.00 filing fee is paid, each subsequent month that the amount in the plaintiff's prison account exceeds $10.00, the agency having custody of Plaintiff shall assess, deduct from the plaintiff's account, and forward to the Clerk payments equal to 20% of the preceding month's income credited to the plaintiff's prison account, with each payment referencing the docket number of this action; and it is further

ORDERED that, pursuant to 28 U.S.C. § 1915(b), the Clerk shall forward a copy of this order by regular mail to the Attorney General of the State of New Jersey and the agency having custody of the plaintiff; and it is finally

ORDERED that the Clerk shall serve a copy of this order, by regular mail, upon the plaintiff and close the file in this matter.

_____
Katharine S. Hayden
United States District Judge